I would like to start with the unprecedented $50.6 million fraud penalty under section 604 of the Contract Disputes Act. The Court of Federal Claims concluded that Deawoo's March 29, 2002, certified claim to the contracting officer violated section 604 because it was a fraudulent effort to get the government to pay it $50.6 million to which it was not entitled. That conclusion is plainly wrong. I'd like to focus on four legal errors that the trial court made that required reversal. First, the court erred in concluding that Deawoo's March 29, 2002, submission to the contracting officer contained a CDA claim for $50.6 million. Second, the court erred in finding that it was fraudulent under section 604 for Deawoo to advise the government of potential future costs that it would incur if the allegedly defective specifications in the contract were not changed. That was not fraudulent. Third, the court erred by imposing a penalty in the full amount of the $50.6 million projection rather than the quote, part of the claim, close quote, that it found to be unsupported by reason of fraud, which is what section 604 requires. Fourth, the court erred by finding fraud in the March 2002 CDA claim based on errors that were not in that claim but were errors that were made years later when Deawoo's damages expert recalculated the claim into a $29 million incurred cost claim that Deawoo pursued at trial. Is that first question on whether this is a CDA claim a question of fact? No, it's a question of law, Your Honor. This court has, over time, addressed the question of what constitutes a CDA claim and has laid down legal rules for what constitutes a CDA claim. Where have we said it's a legal question rather than a fact question? I can't point you to a court case where you say it's a legal question, but the elements of what constitutes a CDA claim are legal rules such as that it be submitted to the contracting officer, that it demand payment as a matter of right. And that, in this case, whether you look at it as a legal question or a factual question, the trial court did not look at the claim itself. But he did look at the claim, and if we assume for the moment, just hypothetically, that it's a fact question, he looked at the claim, he found language in the claim that supported him. He cited to testimony by Deawoo's witnesses that at some point said that they had made such a claim, and he relied on the characterization of the claim in the complaint to the Court of Federal Claims. And so why wouldn't that be substantial evidence to support a finding that there was a claim made for the $50 million? I mean, there may be arguments on the other side also, but that's not our business. If it's a finding of fact, there's substantial support for it, isn't there? No. First, the standard of review in this case on factual questions is clearly erroneous, which is less deferential than substantial evidence. But under- I should have said clearly erroneous, right. So it's less deferential, and the question of whether or not the claim demanded payment of the $50.6 million, in the trial court's opinion, the trial court does not say anything at all about what the claim itself said. It relies entirely on characterizations of the claim that appear outside the claim. But that doesn't mean it didn't consider the language of the claim. The fact that it didn't talk about it, it obviously had to know what the claim was in order to sustain it. I don't know. Let me ask you, Charles, something else again with you. Let us assume that, in fact, these people filed a claim for $50 million and were aware of the fact that they weren't entitled at that point to collect any of it. Would that be fraud? Would not be fraud? If that's what happened. I'm not saying that's what happened. If, with intent to deceive, a contractor submits a claim demanding payment of $50.6 million, knowing that it's not entitled to it, and the claim otherwise meets the requirements of a CDA claim, which is what Section 604 is talking about, then I would say yes. But that's not what happened here. And whether or not it made such a claim is a question of fact. No, I disagree. I believe that the question, initial question, is look at the claim. What does the claim say? It doesn't matter what other people say the claim says. The claim itself is somewhat ambiguous. On the one hand, it says in one paragraph that they're only setting forth what may happen in the future. But then later on, when it explains it, it sets it out in incredible detail. If all they were saying was you owe us $13 million, and if you don't make changes in this contract, by the time the contract is completed, it's going to cost you another $50 million. If that's all they were saying, one would have thought they didn't need to put in all of that detail. The detail on the $50 million is just the same as the detail on the $13 million. Doesn't that at least suggest that it wasn't quite as simple as you make it out? Well, I think the question of whether or not it's ambiguous or not is like looking at a contract. The question of whether it's ambiguous is a question of law. Are there two different reasonable interpretations? It's a question of law that's made in the first instance by the court. Here, the trial court did not say that it was finding the claim to be ambiguous. It simply said, I find based on the complaint and subsequent testimony that it's there. In the subsequent complaint that was filed in this court, they certainly indicated that they had previously filed a claim for $50 million. Indeed, in the prior free relief, under each count, they had two separate items. One was for $13 million and the other was for $50 million. Why doesn't that at least shed some light on what they intended? Well, because the only evidence in the record about why that happened is an attorney's admission that he screwed it up, that he blew it. Well, whether he blew it or not, it's here. I mean, you have to take the case as it comes to us, and as it comes to us, we have two things. We have the claim, certified claim, followed by a complaint in which it's seeking the same total amount as the two elements of the claim. All I'm suggesting to you is it seems to me to be a case in which the evidence kind of could go either way on this thing. Well, I don't think so, because I think if you look at the claim itself, which, as I said, the trial court may be considering it silently, but his opinion certainly does not address it. If you look at the claim, which is in the joint appendix, it's very clear. On page 1385 of the appendix, you have the executive summary of the claim. And it says that this is a request for equitable adjustment to request adjustment of the contract price and performance time to account for past impacts. That's the $13 million through the end of 2001, past impacts. And then it says this request also provides an estimate of future impacts anticipated to be incurred should the defective specification not be changed. And then on the very next page, page 1386 of the appendix, you've got what the request for equitable adjustment is in terms of money. Total cost requested, $13,348,793.07. And then if you look at the certification required by the CDA, it appears on page 1383 of the appendix. It says that the certification is certifying the request for equitable adjustment. It doesn't contain any dollar figures, but the only logical conclusion is that it's certifying what it says is the request for equitable adjustment, which is for past impacts. To make it even clearer, in the conclusion portion of the claim, which is on page 1429 of the appendix, it reads, Daegu has calculated its damages incurred through December 31, 2001. That's the $13.3 million. And it says Daegu expressly reserves its right to seek damages subsequently incurred based upon the same theories of entitlement stated herein and or on additional theories as is subsequently described. Are you saying that this claim, the claim for equitable adjustment, is so clear on its face that it would be inappropriate to look beyond the language of that document? Absolutely. There was no reason to look beyond the language of the document. I don't want to have you run out of time before I address one other question, unless Judge Friedman has any other questions along that line. I wanted to ask you about your alternative argument that the government hasn't proven that the $50 million, the entire $50 million was fraudulent. And if I understand correctly, you point to the Cotton Report, which is the government's report, and you say, well, they identified certain things which were unjustified in the certified claim, but that that doesn't add up to $50 million, correct? Correct. And my problem with your argument, though, is that as I read the Court of Federal Claims' opinion, the Court of Federal Claims found that the basic initial bid price, which is used to calculate the claim for equitable adjustment, was itself baseless, which would affect the entire $50 million, not just particular items. So my question is twofold. One, if the original bid was baseless, isn't that sufficient ground to find the whole $50 million fraudulent? And two, isn't the Court of Federal Claims on this evidence entitled to find that the original bid was baseless? No. I mean, the bid, a bid cannot be baseless. It was a bid for here's how much we'll perform this work for. No, but I'm talking about the cost estimate. When you calculate damages, the starting point is what you expected it to cost, and then you're saying the excess cost should result in an equitable adjustment. So if the starting point is baseless or fraudulent, then it doesn't make any difference that all these costs were, in fact, incurred because the claim is baseless because the starting point is inaccurate, right? Well, I don't think that's what the Court was finding. I mean, I think the Court talks about the bid. Well, let's assume hypothetically it is, that I'm reading it correctly, that is what the Court was finding. There was considerable evidence that this original starting point for the calculation, that is the assumed costs for the contract, were baseless. They couldn't find, you couldn't find a witness to testify that they were correct or even how they were calculated. You know, the Court of Federal Claims found that the original cost estimate was done on a bar napkin. Why isn't there significant evidence to support a finding that the starting point for this calculation was baseless? Well, because there was some cost to be incurred. And if, because of a problem in the way the damages were calculated, the number turns out to be inflated, then the appropriate remedy is the amount of the inflation. But to say that it was impossible for there to be more cost than expected is not what the Court found. In fact, the Court found on the $13 million and said, you know, I can't find fraud on that because it's theoretically possible that a contractor could have incurred additional cost. So I believe if your theory were correct, Your Honor, they would have easily found the full $64 million. But he decided no, not on the $13 million, which shows that the appropriate question is how much inflation was there, if any, in the claim. And, for example, with the scrapped equipment, it was $29,000 or so, duplicate equipment $21,000. And that's the appropriate penalty under 604, not the full projected amount, which was estimated at the time in 2002. But isn't the basic rationale of the Court with respect to the $50 million that they filed for $50 million knowing fully well that they weren't entitled to a nickel of it as of the moment they filed? Isn't that the basic rationale that the Court employed? I'm relying very largely on Mr. King's testimony. Because he rather fuzzily said, well, we just wanted to try to get the government to change it. Right. And if you look at the claim, that's exactly what the claim says. Nowhere in the claim does it say, pay us $50 million. The claim is saying, please change the contract so that we do not incur any of these additional dollars. The claim was an effort to convince the government to act so that they would never incur the money. Except that the claim, I don't understand this, because the claim means, as I understand it, is saying, this is the money you owe us. And what the claim says in terms of pay us the money is $13.3 million. I would have no problem with the argument if all that it had said was that you owe us $13 million. And we want to tell you, just in one sentence, that if you don't change the contract by the time its performance has been completed, you're going to owe us another $50 million. That's how you characterize the claim, I take it. That's correct. And that is what it says. But then when you look at it, it looks as though they filed a second claim for the future which is as much detail as the claim for the past due. I don't think anyone could reasonably read this claim. You read it from front to back. Take the whole thing into consideration. No one could read this and say, this is an effort to get the government to pay Daibu $50.6 million.  No, even though in the claim subsequently filed in this court, that's exactly what they said, that they were seeking $50 million. And the court did not find that complaint to be fraudulent. It simply looked at the complaint rather than the claim to try to determine what the claim says. That's a sufficient answer. You've used up more than your time, but we'll restore your rebuttal time. Mr. McKenna, if you need extra time, you may have it. I'm glad that you would like to speak. You have the mic, do you? Yes. Okay. I assume that's good. May it please the court. I must confess, I'm a little troubled by certainly the last representation, that the claim could not be read, reasonably read, to be asking for the $50 million. Indeed, I don't believe there would be a way to read that complaint. The claim, other than that it asked for $50 million. Indeed, section five of the claim, which appears at 4660. One is a summary page, is the $50 million request. And preceding that are pages and pages. And each one of the pages before, for instance, 2-2-5, cost of escalation. Each of these pages contains this phrase. Contractor is requesting, and it has the number below. And so the page I was pointing to, which is a summary, is the culmination. And now I'm only going to the $50 million. That, of course, is then followed up by pages that form accumulation to the $64 million, which is at, I need glasses, 4669. Mr. Kenner, let me put you a hypothetical. I start with the premise that it's ridiculous. It couldn't have happened. But just assume it, because I think your answer may be of some significance. Suppose a week or 10 days after they had filed the certified claim, the contracting officer announced, I will read the claim. I think it's a good claim. And I'm going to award day rule the entire amount of the claim. It was accordingly attached here to a check for. How much would the check be for? $13 million or $63 million? Clearly, it would have been the $63 million amount, because Mr. Morrison testified that he understood the claim to be requesting $64 million. And indeed, we have documentary and testimony. So they would be getting $63 million, even though a substantial portion of it had not yet been incurred. Indeed. And let's assume they paid that amount, and then the week later the government canceled the contract. Would they have to refund it? Because they're being paid by the government, reimbursed, for damages and additional costs that hadn't yet incurred. On the theory that over three years or whatever it would be, they would incur those. But they're not going to incur them because the government has canceled the contract. Well, indeed. I think, Your Honor, the result of the question about whether or not they would have to reimburse that amount would depend on the form and format of the termination that would take place at that point. Presumably, that, and I'm sorry, I don't mean to, I'm not trying to dodge the question with technicality, but I would. No, it's a tricky question. I recognize that. But it bothers me as well. Indeed. I have to take from the scenario, the hypothetical, that based upon the contracting officer's understanding as to what the claim was demanding. And as I say, he understood, he testified that he understood, and we have a document that he wrote saying this was for $64 million. Based upon that, if the scenario is that he would just grant the claim, then, indeed, the $64 million would be turned into a. I would imagine in practicality, Your Honor, that in reality, the way that would have been transmitted is that they would have expanded the contract price. But there's nothing wrong with making a claim for future costs not yet incurred, right? Per se, no, Your Honor. And that happens fairly frequently. Exactly. Exactly, Your Honor. Neither the government nor the trial court was ever arguing or proposing that the projected nature of the claim per se, that it was the fact that it was projected, was the fraud, was the source of the fraud. Do you believe that that's a fact question as to whether there was a claim for the $50 million?  We've always argued that the trial court did the right thing. First, the reading of the claim, as I say, is, from my standpoint, of course, we argue that it's almost inescapable. But notwithstanding that, when faced with the question of ambiguity, because there are places in the claim where they actually say, well, we reserve our right. Now, it seems to me that that's an escape clause rather than a, because in fact, we know what they did. They did exercise that right. They filed a complaint. And they filed a complaint just nine months after submitting the claim. So whatever they said in the complaint must necessarily be the characterization that a trial court should be able to rely upon for the people who wrote the claim, and they are, in fact, the same people that submitted the complaint, characterizing that claim. Now, David was just arguing that that was the failing of the trial court, that rather than relying upon the words of the claim, that the trial court was relying upon the characterization. Well, I think that would be an impossible construct here to suggest that a trial court would not be allowed to rely upon the representations of lawyers in front of them that are representing what they believe the characterization and are characterizing the claim. Indeed, in the complaint, in paragraph 32 of the complaint, which appears in 1809 in the appendix, it is inescapable. They state unequivocally that the March 2002 day we filed this claim to the contracting officer, where it requested damages for added costs incurred from the October 13, 2000 to December 2001, which we all characterize as the past cost, in the amount of $13 million, etc., and for the added costs incurred to be incurred after December 31st in the amount of $50 million, etc., quote, for a total monetary damage claim of $63 million, etc. Now, those words are inescapable. I don't see that they could be turned out. Do you really think when they asked for a total damage claim of $63 million, they thought they were entitled to get all of it now? Or is it saying, well, we'll get $13 now, and then as time goes along after a year, maybe we'll give you another $13 million? Do you think they were? Were they really asking that they should get fit as a result of this litigation? At the time they filed it, they were entitled to $63 million? Well, actually, Your Honor, I believe that even though in the complaint they say they made the demand over and over and over again, that the government was to give them the full amount, and Mr. Kim, in his testimony of 10746 of the appendix, responds to the question, the purpose of certifying the claims of the government was to get them to pay the full amount, right? And his answer is yes. Now, that's just a main example where it's repeated over and over again. But I think your question actually probes the real underside seediness of this claim and where the real fraud arose here. Because it is kind of a conundrum when you examine it, saying, would they really be expecting $50 million when they haven't done the work yet? The real purpose of this claim, and the reason that the trial court found this so very disturbing, was that during the course of the contract, Daewoo was asking for an exploration and then approval of an alternative compaction methodology, all based upon what was a fraudulent misrepresentation, that they could not perform the compaction that was going on. Indeed, they were successful in performing the compaction. The field density test proved that. So that misrepresentation starts it off. But in fact, what's going on is that the traffic compacted methodology was a method that Daewoo tried to get the government to reduce the contract specifications to such an extent that it would have resulted in enormous windfall to Daewoo and a tremendous additional burden on the government. Yeah, but it seems to me that the mere fact that they are hoping to bargain with the government and that they are putting in a claim which they are going to use for a bargaining chip is not in and of itself sufficient to show fraud. It seems to me also that you need to show that the calculations are baseless. And do you agree, for example, that the only evidence of fraud had been that they made a $2 million, included a $2 million item for equipment that was fraudulent, that that wouldn't have justified the entire $50 million penalty? Indeed, Your Honor, I think we would agree with that. The problem then, it seems to me, is that the Cotton Report does exactly that and goes item by item and identifies a variety of items. Those items, I think, don't add up to $50 million. So you have to find fraud in the overall basic calculation of the claim. And is the theory there that the starting point for the claim, that is, the original cost estimates, were themselves baseless, so the entire claim was baseless? And if that's not the theory, what is the theory? Actually, Your Honor, that is precisely the theory. And indeed, because the claim is based upon two. Well, the claim is based upon many things, and that was part of the problem, is this dense representation of all these calculations getting down to a penny. But to step back, the big bases, the two central premise of this claim, was the claim that they could not do the compaction, and the claim that the weather clause was a misrepresentation of the contract, which allegedly misled Dale. Now, both of those were proven conclusively in trial to have been based upon absolute misrepresentations. As I mentioned a moment ago, the compaction representation was fundamentally disproven by the field density test. In fact, and again, I'm sorry, I want to step back. The context of this, that the trial court was revealed to the trial court through the testimony, was that, indeed, the reason TCRF was being pursued, the trial compacted fill approach was being pursued by Dale, was to, allegedly, because it couldn't meet the compaction. And at the time, they represented to the government that they couldn't meet the compaction. They had proven, and the trial court notes specifically in its decision, that they had proven in their test section that they had met the compaction. And as they continued to work, and indeed, their subcontractor, Putra, who had done package A when it replaced the failing subcontractor, it was proceeding along and successfully achieving the 85% compaction all along. And so there was blatant evidence in front of them, and the testimony of the Daegu officials who assembled the claim, demonstrated that they knew of these facts, even when they were representing that they could not. In fact, the early claim and the early discussions by Daegu were almost saying that it was physically impossible to do what they were doing, while in fact they were doing it. And so with that is one of the central tenets. That being disproved or proven to be a misrepresentation, it was that foundation that starts off the question, well, isn't the whole claim questionable? That first one is disproved. Then the second one— But isn't the claim calculated? I mean, to the extent that anybody can determine how the claim is calculated, which seems to be almost impossible, would be a difference between their reasonably expected costs and the costs that they actually incur, right? Exactly, Your Honor. So if the reasonably expected costs were baseless, then the whole claim is baseless. Indeed. We argued below that only from a slightly different angle, and those things were demonstrated, again, at the claim level, where things like the production rate were terribly misrepresented in the claim, the cost of operation terribly misrepresented in the claim, and each one of those sections of the claim, and the trial court addresses that detail, was demonstrated in front of the trial court over 13 weeks of trial by the incredible testimony of each one, Mr. Cowan, Mr. Stone, the production rate, respectively, and the cost of operation. But Your Honor's point, I think, is very well taken because we should not gloss over the trial court's extensive treatment of the bait-and-switch question because the bait-and-switch presented to the trial court what was the front end of the beginning of a long relationship, all filled with dishonesty, starting with the bait-and-switch and ending with the claim. And the problem for the trial court was trying to encompass all that. I think, indeed, the trial court was struggling with how to find leniency here. In fact, I cannot help but characterize this appeal as challenging the leniency that the trial court found and trying to punish the trial court for reaching out to that. The nature of the bait-and-switch did demonstrate the final evidence. I wouldn't agree with that characterization. Excuse me, Your Honor. I'd say Daewoo probably wouldn't agree with that characterization. I have supreme confidence that that's absolutely correct, Your Honor. But I'm used to that. I rarely have them agree with me. But the nature of the foundation of the contract and the foundation of the relationship between Daewoo and the court engineer is being chipped away by the lack of credibility. I've run out of time. The extensive systemic lack of credibility and the trial court having defined and noting things that he believed that this represented the lack of credibility represented perhaps a systemic nature of the operation of Daewoo in this case. Reflecting that, I think, reflects that point. I need to be quiet. Well, we're giving you the same amount of time as we're returning to him. If you finish, that's fine. Well, I guess the only point there is that the bait-and-switch doesn't form the trial court. And indeed, the question is, well, wouldn't, and I think the discussion a moment ago was, well, what would that mean? Wouldn't that translate into, in essence, finding the entire $64 million to be fraudulent? Well, indeed it would. But more importantly, in fact, if the trial court had wanted to seek out the most extreme, if it was attempting to find the maximum amount of damages against Daewoo, it could have found that the contract void ab initio based upon the bait-and-switch misrepresentations. And the Long Island Savings Bank would have been the support for it to do that. But clearly the trial court chose not to do that. Now, part of that was the government did not seek that. The government did not want that because the government, of course, was deep into the contract. And the government had this overriding concern and international commitment that it needed to fulfill. And that was filled to complete the construction of this road. And I believe the trial court understood that. The trial court recognized that. And I believe the necessity the trial court found to lay out its findings on the bait-and-switch to reflect that it understood. And it showed through all of its credibility findings that not only did it start with the bait-and-switch, but it continued throughout the contract, culminating in the ultimate misrepresentation, the ultimate fraud, where indeed they were suggesting the government should be on the hook for $64 million, when in fact all they really wanted to do was really achieve this coercion of the government to submit to the TCRF, which would have transmitted a tremendous windfall for Daegu and a tremendous increase in cost to the government. With that, we urge the court to uphold this decision. All right. Thank you. Mr. McNish. The trial court, going to your question, Judge Friedman, the trial court clearly did find that the problem with the claim, in its view, was that it was a projection. It says on page 83 of its opinion, page 83 of the joint appendix, $64 million was not an amount the government owed plaintiff at the time of certification, and plaintiff knew it. That's the clearest statement I found in this 85-page opinion as to what it was that the court was finding fraudulent about the $50 million part of the submission in March of 2002. It was not an amount owed. Didn't the court basically say that in this claim they were asking for $64 or $63 million, and they knew they were entitled to it at that time? They might have been entitled to it several years later, but at that time the most they were entitled to was $13 million. Isn't that basically what the court found? I think that is basically what the court found, but when you look at the claim, you see that Daewoo was not asking for $64 million, and it's not reasonable to read the claim as asking for $64 million. Instead, what Daewoo was asking for is, please change the contract so we don't have to incur any more than we've already incurred. Something that bothers me is, all they were asking for was not $64 million, but to change the contract but a claim for an equitable adjustment doesn't include changing the contract, does it? That's what bothers me. If they came in and said, okay, here's our claim, it's $13 million, and we want you to know that if you don't change the contract, it's going to cost you a lot more than that, and then they said, and we're attaching to this claim, explaining what we want changed. That would be one thing, but they didn't do it that. That's not what they did, is it? I think that's exactly what they did, and if you look... Then why did they give you, I still don't understand, why did they give the details of the future claim in the incredible detail? Well, what they did was they took the last three months of 2001, which is the $13 million, they took the last three months and they just projected it forward to... But why didn't they just state that our calculations indicate that if this isn't changed, the total additional amount the government is going to owe us is $50 million? Why did they have to give each one of these lines showing this item and that item and another item, unless they were trying to convince the government you owe us all of it? Well, I think they were trying to show how they calculated the money so that the government would know, and this is something, you know, to affirm what the trial court did here is going to create a huge problem for contractors deciding how to deal with the government when you've got a dispute. Can we tell the government what we think might happen? No, you have to be clear about it, you know, that it's not a claim. You can write a separate letter. I mean, there's no confusion. If you put it in a certified claim, you say we want this amount of money, then you've got a problem. If you write a separate letter or you say we're not making a claim, then you're protected. There's no risk in the future. I think it is because here the contractor did say we're reserving our right to do it later. The government points to some language that it says makes it ambiguous, but all of that is prefaced very clearly on page 1431 of the appendix, which is from the claim. Section 5, the portion that the government references, it's in bold to point out. It says future impacts, that's the $50 million, future impacts are provided as a guide to the government for considering alternate specifications. It's very clear, and being unclear is not fraught. So in this instance, the government bore the burden of proving fraud in this claim. It did not do that, and merely by pointing to ambiguity in the document is not enough to carry that burden. Now, the notion that was raised that the entire premise of the claim was baseless and therefore all of the amount was fraudulent is also belied by the court's ruling that the $13.3 million was not fraudulent. If the court had agreed with what the government just argued, it would have awarded the $64 million. But let's look at what the Board of Engineers itself was saying. I'm not sure that's what the court said. I thought the court said that the whole thing probably was fraudulent, but he was in excess of caution not awarding the $13 million because there might be, in his view, an alternative way of justifying the $13 million that wasn't included originally. That is, an alternative method wasn't included originally. Right, but if what the government is saying is that the underlying claim, the assertion at all that there was a problem with the contract, if that was baseless, then he would have easily found the entire amount fraudulent. And if the problem was that there was no basis, if, as you say, the starting point of the calculations was baseless, and that's the fraud, then he would have found the entire $64 million. He drew a distinction. That's a sufficient answer, sir. Thank you. Time has expired.